CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 2 8 2008

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

JEANNE Q. JACKSON,                    )
                                      )
        Plaintiff,                    )        Civil Action No. 7:07CV0417
                                      )
v.                                    )        **MEMORANDUM OPINION**
                                      )
ALLEGHANY COUNTY, et al.,             )        By: Hon. Glen E. Conrad
                                      )        United States District Judge
        Defendants.                   )

This civil rights action is presently before the court on the motion to abstain filed by

Moran Kiker Brown, PC ("MKB"), Christopher J. Wesser, and Michael Arnold; the motion to

exercise supplemental jurisdiction filed by the plaintiff; the motions to dismiss the plaintiff's first

amended complaint filed by all of the defendants; and the plaintiff's motion for leave to file a

second amended complaint. For the reasons that follow, the motion to abstain will be denied; the

plaintiff's motion to exercise supplemental jurisdiction will be denied; the defendants' motions

to dismiss the plaintiff's first amended complaint will be granted; and the plaintiff's motion for

leave to file a second amended complaint will be granted in part and denied in part.

**Procedural History**

On June 27, 2006, the plaintiff filed her first action in the Circuit Court of Alleghany

County pertaining to the termination of her employment with the Alleghany County

Administrator's Office. In the first state court action, the plaintiff solely asserted claims under

state law. She named Alleghany County, Professional Network Services ("PNS"), David Bailey,

Tammy Stephenson, Rick Hall, Ronnie Underwood, Christopher J. Wesser, and Michael Arnold

as defendants. The plaintiff dismissed Alleghany County, PNS, and Bailey from the first state

court action by order of non-suit entered January 22, 2007.

In February of 2007, the plaintiff filed an amended complaint in the first state court action, which added MKB as a defendant. The amended complaint asserted five claims against Stephenson, Hall, MKB, Wesser, Arnold, and Underwood under state law: tortious interference (Count I); defamation per se (Count II); defamation (Count III); malicious prosecution (Count IV); and common law conspiracy (Count V). On July 10, 2007, the Circuit Court held a hearing on the demurrers filed by Stephenson, Hall, Underwood, MKB, Wesser, and Arnold. By letter opinion dated July 31, 2007, the Circuit Court sustained Stephenson's demurrer as to Count II; Hall and Underwood's demurrers as to Counts II and III; MKB's demurrer as to all five counts; Arnold's demurrer as to Counts I, II, and III; and Wesser's demurrer as to Counts I and II. The first state court action remains pending with respect to Stephenson, Hall, Underwood, Wesser, and Arnold.

On July 20, 2007, the plaintiff filed the instant action in the Circuit Court of Alleghany County against Alleghany County, PNS, Bailey, and the Alleghany County Board of Supervisors, asserting claims under 42 U.S.C. § 1983, the Fourteenth Amendment, and Article I, § 11 of the Constitution of Virginia. The action was removed to this court on August 28, 2007, and on February 19, 2008, the court denied the plaintiff's motion to remand.

On February 11, 2008, the plaintiff filed her first amended complaint, which added Stephenson, Hall, Underwood, MKB, Wesser, and Arnold as defendants to this action. On February 22, 2008, the plaintiff was granted leave to file the amended complaint.

Alleghany County, the Board of Supervisors, PNS, Bailey, Stephenson, Hall, MKB, Wesser, and Arnold subsequently moved to dismiss the first amended complaint. Additionally,

2

MKB, Wesser, and Arnold filed a motion to abstain,[1] and the plaintiff filed a motion to exercise supplemental jurisdiction. The court held a hearing on the parties' motions on June 5, 2008. On June 12, 2008, a motion to dismiss was filed by Underwood. On July 15, 2008, the plaintiff filed a response to Underwood's motion, along with a motion for extension of time to respond.[2] Additionally, on July 14, 2008, the plaintiff filed a motion for leave to file a second amended complaint, to which all of the defendants have now filed a response.

### The Plaintiff's Allegations

In her first amended complaint, the plaintiff alleges that she began working for Alleghany County in June of 1988, and that she subsequently worked for four different County Administrators prior to her termination in December of 2004. The plaintiff alleges that Tammy Stephenson began serving as the County Administrator in 2002. Stephenson apparently remained in that position at all times relevant to this action.

The plaintiff alleges that she began to experience a hostile work environment in 2003, and that her job description and title were changed multiple times. The plaintiff alleges that she attempted to resolve the issues pertaining to her work environment by "proceeding through proper channels to communicate to the County and members of the Board of Supervisors," but that her efforts were unsuccessful. (1st Am. Compl. para. 25). The plaintiff further alleges that Alleghany County and the Board of Supervisors "had a 'custom/policy' of not involving themselves in personnel matters," and that they were "on notice of serious mismanagement

---

[1] In the brief filed in support of their motion to abstain, MKB, Wesser, and Arnold indicate that the plaintiff has since filed a virtually identical § 1983 action against them in state court.

[2] The plaintiff's motion for extension of time will be granted.

3

issues by Stephenson that were affecting the efficient operation of the County offices." (1st Am. Compl. para. 23).

The plaintiff alleges that Alleghany County had a software program installed on its computer system in June of 2003, which monitored employees' use of the system, and that Ronnie Underwood, a subcontractor hired by the County, installed a direct link to the program on the plaintiff's computer. The plaintiff alleges that she was never notified of this change to her computer, or advised that she was not permitted to use the program.

The plaintiff alleges that she first noticed a new icon on her computer on September 14, 2004. Upon clicking on the icon, the plaintiff realized that she had access to the monitoring program. She subsequently utilized the monitoring program to view the computer files maintained by Rick Hall, the Deputy County Administrator. At that time, the plaintiff observed information indicating that Hall was communicating with Stephenson regarding the plaintiff's grievances. The plaintiff alleges that she also saw that Hall had engaged in pornographic chatting on his computer. Consequently, the plaintiff printed a copy of the material "for security reasons." (1st Am. Compl. para. 33).

On September 16, 2004, the plaintiff used the monitoring program again to access Hall's files. At that time, the plaintiff "observed additional pornographic text that indicated Hall was involved in pornographic 'chatting' during county work hours." (1st Am. Compl. para. 10). The plaintiff also printed a copy of that material.

On September 21, 2004, the plaintiff and two other Alleghany County employees met with Carolyn Barnette, a member of the Board of Supervisors, and provided her with a copy of Hall's chat room activity. The plaintiff alleges that it was her intent "to proceed in the least

4

offensive path possible," and that she "felt compelled to disclose the information under the County Employee Handbook Section 8." (1st Am. Compl. para. 35).

The plaintiff alleges that Barnette called Stephenson that same day, and advised her that she had an employee "abusing the computer system in a chat room." (1st Am. Compl. para. 35). The plaintiff alleges that Stephenson then contacted Underwood regarding the problem. The plaintiff further alleges that from September 21 to October 4, 2004, Stephenson, Hall, and Underwood began to manipulate computer data against the plaintiff.

On October 4, 2004, Stephenson met with the plaintiff and three other Alleghany County employees. At that time, the plaintiff explained how she accessed the monitoring program on her computer. The plaintiff stated that she saw a new icon, clicked on it, and observed that "Rick Hall [was] talking about [her]." (1st Am. Compl. para. 37).

The plaintiff alleges that on October 15, 2004, the computers assigned to her and Hall were "seized" and taken to PNS, an independent computer firm in Roanoke, for the performance of an audit. (1st Am. Compl. para. 38). The plaintiff alleges that David Bailey, a PNS employee, returned the computers to the Alleghany County Administrator's Office on October 28, 2004, and that on November 29, 2004, Christopher Wesser and Michael Arnold, with the Richmond law firm of Moran Kiker Brown ("MKB"), met with Stephenson, Underwood, and Bailey "to inspect the computer system server." (1st Am. Compl. para. 40). The plaintiff alleges that Stephenson, Hall, Underwood, MKB, Wesser, Arnold, PNS and Bailey created, altered, deleted, manipulated, and/or misrepresented computer emails and data, and that this data was used to "further Defendants' goal of terminating [the plaintiff's] at will employment relationship with Alleghany County." (1st Am. Compl. para. 47).

5

The plaintiff alleges that she was called into Stephenson's office on December 2, 2004 and given a Notice of Intent to Terminate. The plaintiff further alleges that upon being presented with the Notice, she was "wrongfully accused of various violations, with a threat of computer crimes." (1st Am. Compl. para. 86). The plaintiff alleges that she was terminated on December 9, 2004, pursuant to the Notice of Intent to Terminate, and that she subsequently commenced a grievance proceeding regarding her termination.

The Notice of Intent to Terminate included the following information in a section entitled "Conduct Warranting Termination":

> On October 4, 2004, you, along with three other employees presented me with printed material from another employee's keylog file suggesting the employee had committed a violation of Alleghany County policies.
>
> I took these matters very seriously and started an investigation. The investigation resulted in an audit of several County computers including the one at your workstation. The audit was conducted by an independent computer firm in Roanoke, Virginia and their results were recently reviewed by outside counsel from Richmond, Virginia with significant computer knowledge and expertise.
>
> The conclusion of this audit was that you made unauthorized intrusions into the County's computer system and knowingly accessed files and information to which you were not privileged or authorized to view or obtain. More specifically, the audit shows that numerous times you accessed the fileserver and the County's monitoring system, frequently reviewing other employees' files. This has gone on for a period of time exceeding one year. This directly contradicts your earlier statement to me . . . that on September 15, 2004 you noticed an icon that appeared on your computer under "My Network Place" which allowed you access to the monitoring system located on the fileserver. The nature and manner of access, including the times and frequency of access, establishes that you willfully and repeatedly trespassed into the fileserver. As you are aware, the County's fileserver is highly sensitive and should only be accessed by approved individuals, and

6

you are not one. Moreover, your actions raise substantial privacy
issues. Your conduct is not only a violation of the County's
policies and procedures, including many of the items in Section 7
and Section 8 of the County's Personnel Manual, including, but not
limited to, Section 7.1, 7.6 and Section 8(1), (3), and (18) and the
Internet/Email Policy, but may have criminal ramifications.

(Pl.'s Resp. to Underwood's Mot. to Dismiss, Ex. 1).

On January 6, 2005, the County Attorney drafted a memorandum to the plaintiff's

personnel file. The memorandum summarized the results of the computer audit and investigation

performed by outside sources. The memorandum indicated that, based on the investigation, it

was concluded that the plaintiff accessed and altered certain computer programs and files without

authorization, and that her conduct was in violation of Virginia criminal law and the County's

personnel policies.

On February 14, 2005, the plaintiff's attorney filed a Notice of Claim with the Board of

Supervisors on the plaintiff's behalf. The Notice provided as follows:

Please accept this correspondence as notice of my claim, made on
behalf of Jeanne Jackson, against the County Administrator,
Tammy Stephenson, and other county employees. This claim
arises out of and is related to events following October 4, 2004,
when Ms. Jackson along with three other employees presented the
County Administrator with printed material from another County
employee's key log file, indicating a violation of Alleghany County
internet policies.

The subsequent "investigation" conducted at the direction of the
County Administrator has resulted in a report which contains false
allegations against Ms. Jackson, and was used to justify Ms.
Jackson's termination from the county on December 9, 2004.
Upon information and belief, Tammy Stephenson has made
statements about Ms. Jackson related to Ms. Jackson's work and
conduct as an employee of the County which are false and
defamatory per se.

7

> You should take such notice and action as you deem appropriate to
> protect any affected interests.

(1st Am. Compl., Ex. H).

The plaintiff alleges that a grievance panel hearing was held on June 15, 2005, which

lasted approximately ten hours. The grievance panel ultimately voted 2-1 in favor of upholding

the plaintiff's termination.

On July 12, 2005, the plaintiff was indicted by a grand jury in the Circuit Court of

Alleghany County on 36 indictments charging the plaintiff with various computer crimes. The

charges were subsequently nolle prossed on March 16, 2006. The plaintiff alleges that the

indictments were without probable cause and malicious, "set on foot by the Defendants,

Stephenson, Underwood, Hall, MKB/Wesser/Arnold and PNS/Bailey," and that "the prosecution

was instituted and/or procured by the cooperation of all these same Defendants." (1st Am.

Compl. para. 71).

Based on the aforementioned allegations, the plaintiff asserts the following claims in her

first amended complaint: "malicious prosecution" (Count I); "denial of free speech" (Count II);

"violation of her liberty interest" (Count III); and "denial of due process of law" (Count IV). (1st

Am. Compl. pg. 49, 56, 58, 59). The plaintiff alleges that her claims "arise under 42 U.S.C. §

1983, the Fourteenth Amendment to the United States Constitution and Article I, § 11 of the

Constitution of Virginia." (1st Am. Compl. para. 15).

## Discussion

### I.     Motion to Abstain

In addition to moving to dismiss the plaintiff's first amended complaint, MKB, Wesser,

and Arnold (collectively referred to as "the MKB defendants") have filed a motion to abstain,

pursuant to <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800 (1976), on the basis that related actions are pending in state court. For the following reasons, the motion to abstain will be denied.

As a general rule, "our dual system of federal and state governments allows parallel actions to proceed to judgment until one becomes preclusive of the other." <u>Chase Brexton Health Services, Inc. v. Maryland</u>, 411 F.3d 457, 462 (4th Cir. 2005). Indeed, the Supreme Court of the United States has emphasized that federal courts have a "virtually unflagging obligation to exercise jurisdiction given to them," <u>Colorado River</u>, 424 U.S. at 817, and "'have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not,'" <u>Chase Brexton</u>, 411 F.3d at 462 (quoting <u>Cohens v. Virginia</u>, 19 U.S. (6 Wheat.) 264, 404 (1821)).

Nonetheless, in <u>Colorado River</u>, the Supreme Court recognized an "extraordinary and narrow exception" to the rule favoring the exercise of jurisdiction. <u>Colorado River</u>, 424 U.S. at 813. "Quite apart from the important policies underlying the traditional grounds for abstention, <u>Colorado River</u>, solely as a matter of judicial administration, permits dismissal of a duplicative federal action when 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' clearly favors abstention." <u>Chase Brexton</u>, 411 F.3d at 463 (quoting <u>Colorado River</u>, 424 U.S. at 817). Because abstention under <u>Colorado River</u> is not based on "weightier concerns of proper constitutional adjudication and federal-state relations," it must be "applied parsimoniously." <u>Id.</u> The United States Court of Appeals for the Fourth Circuit has admonished that district courts "must remain mindful that this form of abstention is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." <u>Id.</u>

9

In deciding whether <u>Colorado River</u> abstention is appropriate, the court must first determine whether there are parallel proceedings in both state and federal court. <u>Id.</u> Even if there are parallel proceedings, however, the court must balance several additional factors to determine whether exceptional circumstances exist to justify the surrender of jurisdiction. Those factors are as follows:

> (1) whether the subject matter of the litigation involves property where the first court may assume <u>in rem</u> jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

<u>Chase Brexton</u>, 411 F.3d at 463-464. In balancing these factors, the balance is "heavily weighted in favor of the <u>exercise</u> of jurisdiction." <u>Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.</u>, 460 U.S. 1, 15 (1983) (emphasis added). In the end, abstention may be considered only when "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." <u>Id.</u>

Applying these principles, the court is unable to conclude that this action presents the "exceptional circumstances" necessary for the court to abstain from exercising jurisdiction under <u>Colorado River</u>. First, it is not entirely clear that parallel proceedings exist. "Suits are considered parallel 'if substantially the same parties litigate substantially the same issues in different forums.'" <u>Al-Abood v. El-Shamari</u>, 217 F.3d 225, 232 (4th Cir. 2000) (quoting <u>New Beckley Mining Corp. v. International Union</u>, 946 F.2d 1072, 1073 (4th Cir. 1991)). In this case, there are apparently two related actions pending in state court, one filed before the instant action

10

was removed to this court, the other filed subsequent to the removal of this action. The first state court action involves only claims under state common law, whereas the instant action involves claims under § 1983, the Constitution of the United States, and the Constitution of Virginia. Although the second state court action allegedly involves "virtually identical § 1983 [claims] against the MKB defendants," (MKB Defs.' Br. in Supp. of Mot. to Abstain pg. 7), there is no indication that the any of the other defendants in the instant action are also implicated in that action.

Nonetheless, even assuming that parallel proceedings do exist, an analysis of the six factors identified in <u>Chase Brexton</u> reveals that abstention under <u>Colorado River</u> is inappropriate. Since there is no real property at issue in this case, the first factor -- whether the subject matter of the litigation involves property over which the first court may assume <u>in rem</u> jurisdiction to the exclusion of others -- is inapplicable. Likewise, consideration of the second factor -- whether the federal forum is inconvenient -- does not provide any support for abstention in this case. Additionally, the fifth and sixth factors -- whether the merits of the plaintiff's claims are based on state law or federal law and whether the state proceedings are adequate to protect the parties' rights -- do not counsel in favor of abstention. This action is based primarily on alleged violations of the Constitution of the United States, and the substantive merits of such claims are obviously based on federal law. Moreover, while the MKB defendants indicate that the plaintiff has recently filed identical claims under § 1983 against them in state court, there is no indication that all of the instant defendants are named in that action. Thus, the court is unable to conclude that the state proceedings would be an adequate vehicle for the complete resolution of all of the issues between the parties.

11

The thrust of the MKB defendant's motion is that the third factor -- the desirability of avoiding piecemeal litigation -- weighs in favor of abstention. The MKB defendants emphasize that they "have already defended against accusations related to the same alleged conduct (absent allegations of state action or the § 1983 label)" and that "[t]o force the MKB defendants to turn around and defend that conduct in the federal case . . . is, by definition, to engage in piecemeal litigation." (MKB Defs.' Br. in Supp. of Mot. to Abstain pg. 7). However, "[t]he threat of piecemeal litigation in the sense that two cases proceed simultaneously . . . is not sufficient to support a decision to abstain under Colorado River." Chase Brexton, 411 F.3d at 465-466. Likewise, "[t]he mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction." Colorado River, 424 U.S. 817.

For these reasons, the court concludes that the MKB defendants have not overcome the "heavily weighted" balance in favor of retaining jurisdiction. Moses H. Cone, 460 U.S. at 15. Accordingly, their motion to abstain under Colorado River will be denied.

## II.      Motion to Exercise Supplemental Jurisdiction

In response to the MKB defendants' motion to abstain, the plaintiff filed a "motion to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367." In that motion, the plaintiff requests that the court exercise jurisdiction over the pending state court actions, which have not been removed to this court. However, the court is unaware of any authority to support the notion that § 1367 permits a federal district court to take over an ongoing action in state court in the manner suggested by the plaintiff. Accordingly, the plaintiff's motion to exercise supplemental jurisdiction will be denied.

### III.   **Motions to Dismiss**

All of the defendants have moved to dismiss the claims asserted in the plaintiff's first amended complaint.  The defendants' motions are based, primarily, on Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides for the dismissal of a complaint "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999).  When reviewing a claim under Rule 12(b)(6), the court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Id. at 244.  Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007).  Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level."  Id. at 1965.

### A.   **Count I: Malicious Prosecution**

In Count I of her first amended complaint, the plaintiff asserts a claim for malicious prosecution.  Because this claim is raised solely under § 1983 and the Fourteenth Amendment, the court agrees with the defendants that Count I is without merit.[3]  It is well-established that §

---

[3] The court notes that the plaintiff has repeatedly stated that her claims arise under 42 U.S.C. § 1983, the Constitution of the United States, and Article I, § 11 of the Constitution of Virginia, (Pl.'s Original Compl. pg. 1-2; Pl.'s 1st Am. Compl. pg. 6; Pl.'s 2d Am. Compl. pg. 4), and the plaintiff has not attempted to amend the action to include any state common law claims.  Thus, the court does not construe Count I as asserting a state common law claim for malicious prosecution.

13

1983 merely provides "a method for vindicating federal rights elsewhere conferred;" it "is not itself a source of substantive rights." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). Consequently, the Fourth Circuit has made it "clear that there is no such thing as a '§ 1983 malicious prosecution' claim." Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000). Instead,

> [w]hat [the Court] termed a "malicious prosecution" claim in [Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996)] is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution -- specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. See Brooks, 85 F.3d at 183. It is not an independent cause of action.

Lambert, 223 F.3d at 262.

Notwithstanding the Fourth Circuit's holding in Lambert, the plaintiff argues in response to Stephenson and Hall's motion to dismiss that she "reads Lambert and [Albright v. Oliver, 510 U.S. 266 (1994)] in a way which allows a 1983 Malicious Prosecution action founded on a constitutional right other than a Fourth Amendment violation." (Pl.'s Resp to Stephenson and Hall's Mot. to Dismiss pg. 9). The plaintiff's argument, however, is without merit. As the Fourth Circuit explained in Lambert,

> [i]nitially, some lower courts, including this Court, held that a plaintiff could prove a violation of substantive due process by proving the common law elements of malicious prosecution and state action. See, e.g., Goodwin v. Metts, 885 F.2d 157, 160 n.1 (4th Cir. 1992). The Supreme Court rejected this approach, however, in Albright v. Oliver. . . . Albright involved a § 1983 claim that the petitioner styled a "malicious prosecution" claim, in which the petitioner contended that his "liberty interest to be free from criminal prosecution except upon probable cause" constituted a violation of substantive due process. 510 U.S. at 268. The Albright Court did not produce a majority opinion, but a majority of justices agreed that the right to be free from prosecution without probable cause was not a substantive due process right, but rather

14

was a violation of the petitioner's Fourth Amendment right to be
free from unreasonable seizures.

Lambert, 223 F.3d at 261.

Based on the foregoing case law, and the plaintiff's concession that she "is not raising the

Fourth Amendment issue" in Count I of her first amended complaint, (Pl.'s Resp. to Hall and

Stephenson's Mot. to Dismiss pg. 14), the court concludes that Count I must be dismissed.[4]

### B.      Count II: First Amendment Retaliation

In Count II of her first amended complaint, the plaintiff asserts a First Amendment

retaliation claim. Specifically, the plaintiff alleges that she was terminated in retaliation for

speaking with Carolyn Barnette and Tammy Stephenson regarding the pornographic chat

material that she discovered when reviewing Rick Hall's computer files.

The Supreme Court of the United States "has made clear that public employees do not

surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos,

547 U.S. 410, 417 (2006). Indeed, "[t]he Supreme Court's decision in Pickering v. Board of

Educ., 391 U.S. 563 . . . (1968), and cases following, established that a . . . government employer

violates the Constitution if it deprives an employee of a valuable employment benefit in

retaliation for the employee's exercise of [her] constitutionally protected speech." DiMeglio v.

Haines, 45 F.3d 790, 804 (4th Cir. 1995). In order to establish a violation of her First

Amendment rights, a public employee must satisfy the following three elements:

> First, the public employee must have spoken as a citizen, not as an
> employee, on a matter of public concern. Second, the employee's
> interest in the expression at issue must have outweighed the

---

[4] The court notes that the plaintiff has since moved to file a second amended complaint asserting
a claim under the Fourth Amendment. That motion will be discussed infra.

15

employer's interest in providing effective and efficient services to the public. Third, there must have been a sufficient causal nexus between the protected speech and the retaliatory employment action.

Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 316 (4th Cir. 2006) (internal citations and quotation marks omitted).

Thus, to determine whether the plaintiff's speech is constitutionally protected, the court must first decide, as a threshold matter, whether the plaintiff "spoke as a citizen on a matter of public concern." Garcetti, 547 U.S. at 418. This determination "is a question of law for the court," which "should be made by examining the 'content, form and context of a given statement, as revealed by the record as a whole.'" Holland v. Rimmer, 25 F.3d 1251, 1255 (4th Cir. 1994) (quoting Connick v. Myers, 461 U.S. 138, 147-148 (1983)). "Because almost anything that occurs within a public agency could be a concern to the public," the court's inquiry must "not focus on the inherent interest or importance of the matters discussed by the employee," but on "whether the speech at issue . . . was made primarily in the plaintiff's role as a citizen or primarily in his role as employee." DiMeglio v. Haines, 45 F.3d 790, 805 (4th Cir. 1995) (quoting Terrell v. Univ. of Texas Sys. Police, 792 F.2d 1360, 1362 (5th Cir. 1986)); see also Urofsky v. Gilmore, 216 F.3d 401, 407 (4th Cir. 2000) (en banc) (emphasizing that "critical to a determination of whether employee speech is entitled to First Amendment protection is whether the speech is made primarily in the [employee's] role as citizen or primarily in [her] role as employee") (internal citation and quotation marks omitted).

Applying these principles, the court concludes that it is clear from the plaintiff's allegations that her statements to Barnette and Stephenson were not made as a citizen upon a matter of public concern. First, the plaintiff's statements were, at base, complaints regarding a

16

co-worker's inappropriate work habits. <u>See</u> <u>Barnes v. Small</u>, 840 F.2d 972, 982 (D.C. Cir. 1988) (holding that an employee's statements, which "addressed only the misbehavior of other employees in his office, and not matters relating to any broader public interest," were not protected by the First Amendment); <u>Thomasson v. Modlinski</u>, 876 F. Supp. 818, 823 (E.D. Va. 1995) (holding that the content of the plaintiff's speech, which addressed the work habits of another employee, was "most accurately characterized as an employee grievance concerning internal office policy") (internal citation and quotation marks omitted), <u>aff'd</u>, 76 F.3d 375 (4th Cir. 1996). Nonetheless, even assuming that the salacious nature of Hall's alleged computer activity would arouse interest in the community, "the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment." <u>DiMeglio</u>, 45 F.3d at 805. Instead, as previously stated, the critical determination is "whether the speech at issue . . . was made primarily in the plaintiff's role as citizen or primarily in [her] role as employee." <u>Id.</u>

In this case, the form and context of the plaintiff's communications establish that they were made as an employee to other County officials and employees, "not as a citizen speaking out to the public about matters of public concern." <u>Holland</u>, 25 F.3d at 1255-1256. The plaintiff alleges that she "felt compelled to disclose [the] information under the County Employee Handbook." (1st Am. Compl. para. 35). Consequently, the plaintiff and two other County employees "discrete[ly]" shared the information with Barnette, a County official, who relayed the information to Stephenson, Hall's supervisor. The plaintiff later attended a meeting with Stephenson and three other County employees, during which the plaintiff explained how she accessed the computer program. Rather than communicating her concerns to the public, the

17

plaintiff alleges that she endeavored "to proceed in the least offensive path possible," such as to "permit the discrete handling of [the] matter" by Hall's supervisors. (1st Am. Compl. para. 35).

Based on the foregoing allegations, the court concludes, as a matter of law, that the plaintiff was not speaking as a citizen upon a matter of public concern when she spoke with Barnette and Stephenson regarding Hall's computer activity. See, e.g., Holland, 25 F.3d at 1256 (explaining that "[b]oth the content, internal employee discipline, and the context, in-house communications between employees speaking as employees," of a public employee's speech showed that the speech was not on a matter of public concern) (emphasis in original). Accordingly, the plaintiff's First Amendment claim must be dismissed.

## C.    Count III: Liberty Interest Claim

In Count III, the plaintiff alleges that she was deprived of her liberty interest, in violation of the Due Process Clause of the Fourteenth Amendment. To support this claim, the plaintiff alleges that she was indicted without probable cause, and that she "suffered great humiliation, embarrassment, damage to her reputation and credibility and standing in the community as a result of this violation of her interest in liberty." (1st Am. Compl. para. 94). Because "[t]he Supreme Court has rejected the proposition that a defendant possesses a liberty interest in avoiding prosecution upon less than probable cause," Brooks v. City of Winston-Salem, 85 F.3d at 178, the defendants moved to dismiss this claim on the merits.

In response to the defendants' motions, the plaintiff argues that the defendants misunderstood Count III, and that her liberty interest claim is instead based on "the stigma of the controversy under which [she] was terminated" and the stigma resulting from the indictments. (Pl.'s Resp. to the County Defs.' Mot. to Dismiss pg. 20); see also (Pl.'s Resp. to Stephenson and

Hall's Mot. to Dismiss pg. 14) ("Rather, it is the unsupported criminal charges and the associated stigma on her good name, honor and reputation, not the seizure of her person upon which she contends that her liberty interest was violated."). The plaintiff argues that her liberty interest claim is supported by the Supreme Court's decision in Board of Regents of State Colleges v. Roth, 408 U.S. 564 (1972).

In Roth, a non-tenured professor who was not rehired for a second year filed an action alleging that "the failure of University officials to give him notice of any reason for nonretention and an opportunity for a hearing violated his right to procedural due process of law." Roth, 408 U.S. at 568. The "only question" presented to the Supreme Court was "whether the respondent had a constitutional right to a statement of reasons and a hearing on the University's decision not to rehire him for another year." Id. at 569. In holding that the professor was not deprived of any liberty interest protected by the Fourteenth Amendment, the Supreme Court explained as follows:

> The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. In such a case, due process would accord an opportunity to refute the charge before University officials. In the present case, however, there is no suggestion whatever that the respondent's good name, reputation, honor, or integrity is at stake.

Id. at 573 (internal citations and quotation marks omitted).

Four years later, in Paul v. Davis, 424 U.S. 693 (1976), the Supreme Court further clarified its holding in Roth, explaining that defamation alone, without a connection to "some more tangible interests such as employment," does not invoke the procedural protections of the

19

Due Process Clause. Paul, 424 U.S. at 701. The Court emphasized that "[w]hile Roth recognized that governmental action defaming an individual in the course of declining to rehire him could entitle the person to notice and an opportunity to be heard as to the defamation, its language is quite inconsistent with any notion that a defamation perpetrated by a government official but unconnected with any refusal to rehire would be actionable under the Fourteenth Amendment." Id. at 710. In other words, "the defamation had to occur in the course of the termination of employment." Id.; see also Stone v. Univ. of Maryland Med. Sys. Corp., 855 F.2d 167, 172 n. 5 (4th Cir. 1988) (emphasizing that "the clear implication from Paul v. Davis . . . is that a public employer's stigmatizing remarks do not deprive an employee of a liberty interest unless they are made in the course of a discharge or significant demotion").

That same year, the Supreme Court decided the case of Bishop v. Wood, 426 U.S. 341 (1976). In Bishop, a discharged city police officer sued his former employer claiming that false charges accompanying his discharge deprived him of an interest in liberty protected by the Due Process Clause, even though his employer had not publicly disclosed the reasons for the discharge. Bishop, 426 U.S. at 348. The Supreme Court rejected the police officer's claim, holding that because the employer's decision was communicated orally to the police officer, and not "made public," it could not "properly form the basis for a claim that petitioner's interest in his good name, reputation, honor, or integrity was thereby impaired." Id. (internal quotation marks omitted). Although the police officer argued that the reasons for his discharge were false, the Court emphasized that, "[e]ven so, the reasons stated to him in private had no different impact on his reputation than if they had been true." Id. at 349; see also Codd v. Velger, 429 U.S. 624, 628 (1977) ("Only if the employer creates and disseminates a false and defamatory

20

impression about the employee in connection with his termination is such a hearing required.")
(emphasis added).

Applying these principles, the court concludes that the plaintiff's liberty interest claim is without merit. The court does not doubt the plaintiff's assertion that the indictments and the ensuing criminal prosecution had an impact on the plaintiff's reputation. However, the plaintiff had ceased to be an employee of the County more than six months before the indictments were returned by the grand jury. Thus, even if the charges placed a stigma on the plaintiff's reputation, they were not made in the course of the plaintiff's termination, and thus, did not deprive the plaintiff of a constitutionally protected liberty interest. See Paul v. Davis, supra.

In response to the motion to dismiss filed by Stephenson and Hall, as well as the motion to dismiss filed by Underwood, the plaintiff argues that the "criminal charges" were also discussed in a memorandum drafted by the County Attorney on January 6, 2005, "after the Plaintiff had been terminated." (Pl.'s Resp. to Stephenson and Hall's Mot. pg. 15; Pl's Resp. to Underwood's Mot. pg. 14). That memorandum, however, which included a "summary of findings" pertaining to Jackson's alleged misconduct," was written only to the "Jeanne Jackson Personnel File," (1st Am. Compl., Ex. A), and neither the plaintiff's first amended complaint nor her various briefs filed in response to the defendants' motions contain sufficient allegations to establish that the memorandum was "made public." Bishop, 426 U.S. at 348.

In Sciolino v. City of Newport News, 480 F.3d 642 (4th Cir. 2007), the plaintiff, a former probationary city police officer, asserted "that when discharging him, the city placed in his personnel file false information damaging to his good name without granting him a name-clearing hearing, and so deprived him of liberty rights without due process of law." Sciolino,

Case 7:07-cv-00417-GEC-mfu   Document 97   Filed 08/28/08   Page 21 of 35   Pageid#: 1143

480 F.3d at 644. The district court granted the defendants' motion to dismiss, "holding that in order to give rise to a due process claim, a plaintiff must allege facts asserting that damaging and false charges in his personnel file were likely to be disseminated to prospective employers or members of the public." Id. In affirming the district court's decision, the Fourth Circuit held that to meet the "public disclosure" requirement of Bishop v. Wood, supra, "an employee must allege (and ultimately prove) a likelihood that prospective employers (i.e., employers to whom he will apply) or the public at large will inspect the file." Id. at 650. Because the plaintiff's first amended complaint "alleged only that his file with the charges 'may be available to prospective employers,'" the Fourth Circuit agreed with the district court that the plaintiff's complaint was deficient. Id.

In this case, the plaintiff does not allege that her personnel file may be available to prospective employers, much less that her personnel file will likely be disseminated to prospective employers or the general public. Accordingly, the court concludes that the plaintiff has failed to state a claim upon which relief may be granted, and that her liberty interest claim must be dismissed.

### D. Count IV: Property Interest Claim

In Count IV, the plaintiff alleges that the defendants deprived her of her alleged property interest in continued employment with the County in violation of the Due Process Clause of the Fourteenth Amendment. To support this claim, the plaintiff alleges that she did not receive "any pre-termination due process as set forth in the Personnel Policy Manual and Procedure including fair opportunities to address any allegations prior to termination," and that she "was further denied any post termination due process by the Defendants refusal to provide notice of any

22

information supporting the allegations that were levied against her, and by the failure of the Defendant[s] to provide notice of specific allegations of wrongdoing." (1st Am. Compl. para. 101-102). For the following reasons, the court agrees with the defendants that the plaintiff's property interest claim is also without merit.

In order to be entitled to the procedural safeguards encompassed by the Due Process Clause of the Fourteenth Amendment, "the complaining party must suffer from [the] deprivation of a liberty or property interest." Beckham v. Harris, 756 F.2d 1032, 1036 (4th Cir. 1985). Whether a plaintiff has a property interest protected under the Due Process Clause depends on the plaintiff's property rights under state law. Roth, 408 U.S. at 577; see also Mandel v. Allen, 81 F.3d 478, 479 (4th Cir. 1996) ("In order to state a due process claim, appellants must first demonstrate that [they] possess[] a cognizable property interest, rooted in state law in the lost benefit.") (internal citations and quotation marks omitted). "In Virginia, an employment relationship is presumed to be at-will," County of Giles v. Wines, 546 S.E.2d 721, 723 (Va. 2001), and, indeed, the plaintiff concedes that she had an "at will employment relationship with Alleghany County," (1st Am. Compl. para. 47). Consequently, the plaintiff's property interest claim fails as a matter of law, since "[a] local government employee serving 'at the will and pleasure' of the government employer has no legitimate expectancy of continued employment and thus has no protected property interest." Jenkins v. Weatherholtz, 909 F.2d 105, 107 (4th Cir. 1990).[5]

---

[5] The court notes that in response to the defendants' motions to dismiss, the plaintiff does not dispute the fact that she was an at-will employee. Instead, the plaintiff argues that Virginia law recognizes a claim for tortious interference with a contract that is terminable at will, citing Duggin v. Adams, 360 S.E.2d 832 (Va. 1987), and suggests that the existence of a potential cause of action constitutes a property interest. However, the plaintiff does not cite and the court is unaware of any

### E.    State Constitutional Claim

Although the plaintiff's first amended complaint does not include a separate count asserting any claims under the Constitution of Virginia, the plaintiff alleges at the beginning of the complaint that her claims also arise under "Article I, § 11 of the Constitution of Virginia." (1st Am. Compl. para 15).  Article I, § 11 states that "no person shall be deprived of [her] life, liberty, or property without due process of law."

The Supreme Court of Virginia has held that "the due process protections afforded under the Constitution of Virginia are co-extensive with those of the federal constitution," and thus, that the "same analysis will apply to both." Shivaee v. Commonwealth, 613 S.E.2d 570, 574 (Va. 2005).  Thus, having concluded that the plaintiff's federal due process claims are without merit, the plaintiff's claims under Article I, § 11 of the Constitution of Virginia must also be dismissed.

In sum, the court concludes that the plaintiff's first amended complaint fails to state a claim upon which relief may be granted.[6]  Accordingly, the court will grant the defendants' motions to dismiss the plaintiff's first amended complaint.

### IV.    Motion to Amend

Although the plaintiff previously indicated that she was not attempting to assert a Fourth Amendment claim in her first amended complaint, she has now moved for leave to file a second amended complaint, which includes a fifth count asserting a malicious prosecution claim

---

authority to support the proposition that the mere existence of a potential cause of action under state law gives rise to a property interest in continued employment subject to federal due process protection.

[6] Having concluded that the claims asserted in the plaintiff's first amended complaint are without merit, the court need not address the defendants' alternative argument that Counts II, III, and IV are barred by the applicable two-year statute of limitation.

24

founded on the Fourth Amendment. To support this claim, the plaintiff alleges in the proposed second amended complaint that she was indicted on July 12, 2005 on the basis of false, fabricated, and/or misrepresented facts presented by the defendants to the Office of the Attorney General; that the Grand Jury would not have found probable cause to indict her if truthful information regarding the state of the computer evidence had been presented to the Grand Jury; and that "[f]rom July 12, 2005 until March 16, 2006 the Plaintiff was under the authority of the Court requiring her to comply with its orders, appear at all appropriate hearings, [and] to answer to the charges." (2d Am. Compl. para. 111-114).

The plaintiff also incorporates her first amended complaint, in which the plaintiff alleges that she was "indicted by [Matt] Nelson with the Attorney General's Office on thirty-six indictments alleging various computer crimes," and that the indictments and prosecution were "set on foot by the Defendants, Stephenson, Underwood, Hall, MKB/Wesser/Arnold and PNS/Bailey. (1st Am. Compl. para. 71). The plaintiff further alleges that the Attorney General's Office "relied on documents and representations received from Defendants Stephenson, Hall, Underwood, MKB/Wesser/Arnold (and other personnel), and PNS/Bailey," and that "misrepresentations made to Nelson and the Investigator regarding the state of the computer data by Stephenson, Hall, Underwood, Wesser/MKB/Arnold and PNS/Bailey led the prosecutor and investigator to believe that the chain of custody, integrity and reliability of the evidence could not be questioned and that the computer data supported the documents provided to Nelson and prepared by Wesser/MKB and Arnold in cooperation with Hall, Stephenson, Underwood, [and] PNS/Bailey." (1st Am. Compl. para. 73). Additionally, the plaintiff alleges that "Stephenson used her position, her political influence, and her personal relationship with Nelson, to convince

25

Nelson the investigation(s) she, Underwood, PNS/Bailey and Wesser/MKB and Arnold allegedly conducted of the computer evidence was sufficient to indict Jackson. (1st Am. Compl. para. 79).

Rule 15(a) of the Federal Rules of Civil Procedure provides that after a pleading has been amended once, a party may not further amend the pleading without the court's leave or the opposing party's written consent. The rule further provides that leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The Fourth Circuit has interpreted "[t]his liberal rule" to "provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). With respect to the issue of prejudice, the Fourth Circuit has explained as follows:

> Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. A common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the [defendant, and] is offered shortly before or during trial. An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred.

Laber, 438 F.3d at 427 (internal citation and quotation marks omitted).

Applying this liberal standard, the court is unable to conclude that allowing the plaintiff to amend her complaint would prejudice the defendants, or that there is sufficient evidence of bad faith on the part of the plaintiff. Accordingly, the court must determine whether the requested amendment would be futile with respect to any of the defendants. "[L]eave to amend should be denied on the ground of futility when the proposed amendment is clearly insufficient because of substantive or procedural considerations." Goewey v. United States, 886 F. Supp.

26

1268, 1284 (D.S.C. 1995) (citing <u>Davis v. Piper Aircraft Corp.</u>, 615 F.2d 606, 613 (4th Cir. 1980)).

For the following reasons, the plaintiff's motion for leave to amend will be denied as futile with respect to Bailey, Alleghany County, the Alleghany County Board of Supervisors, PNS, and MKB. However, the plaintiff's motion for leave to amend will be granted to the extent that the second amended complaint asserts a Fourth Amendment claim against Stephenson, Hall, Wesser, Arnold, and Underwood.

## A.    <u>David Bailey</u>

The plaintiff's motion for leave to amend will be denied as futile with respect to Bailey, because Bailey, an original defendant, has not been served with process. Indeed, the plaintiff "concedes that . . . Bailey has not been served within the 120 day time period" required by Rule 4(m) of the Federal Rules of Civil Procedure. (Pl.'s Resp. to PNS and Bailey's Mot. to Dismiss pg. 5). Although the plaintiff indicates that she has attempted to serve Bailey, and that "reports from the process server were that the address was insufficient," (Pl.'s Resp. to PNS and Bailey's Mot. to Dismiss pg.5-6), the plaintiff provides no indication that she has undertaken additional efforts to obtain Bailey's correct address. Additionally, the plaintiff has at no time requested an extension of time in which to accomplish service of process upon Bailey. Accordingly, because the plaintiff has failed to properly serve Bailey and has not shown good cause for her failure, amending her complaint to include a new claim against Bailey would be futile.[7]

---

[7] The court notes that "the 120-day period provided by Rule 4(m) is not restarted by the filing of an amended complaint except as to [any] defendants newly added in the amended complaint." <u>Bolden v. City of Topeka</u>, 441 F.3d 1129, 1148 (10th Cir. 2006). As previously stated, Bailey was named as a defendant in the plaintiff's original complaint, which was filed more than one year ago.

## B.    The County and the Board of Supervisors

The court also concludes that the proposed amendment would be futile with respect to the County and the Board of Supervisors, because it fails to state a claim against these municipal defendants. Even assuming arguendo that the plaintiff suffered a deprivation of her Fourth Amendment rights, "it is by now well settled that a municipality is only liable under section 1983 if it causes such a deprivation through an official policy or custom." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690-691 (1978)). Municipal liability under § 1983 may not be predicated solely upon a theory of respondeat superior. Monell, 436 U.S. at 691.

In this case, the plaintiff attempts to hold the County and the Board liable for the claimed deprivation of her Fourth Amendment rights on the basis of the municipal defendants' alleged inaction. Specifically, the plaintiff alleges that she filed a Notice of Claim against the County on February 14, 2005, and that the municipal defendants "failed to take any action whatsoever regarding her Notice of Claim and thereby allow[ed] [the Fourth Amendment violation] to occur." (2d Am. Compl. para. 12).

While the United States Court of Appeals for the Fourth Circuit has recognized that there are circumstances in which a municipal policy or custom may be inferred from municipal inaction, such circumstances are not alleged in this case. For instance, in Milligan v. City of Newport News, 743 F.2d 227 (4th Cir. 1984), the Fourth Circuit held that municipal policy or custom "may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of city employees." Milligan, 743 F.2d at 229-230. Additionally, "under quite narrow circumstances," a municipal policy or custom may be

28

inferred "from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." Id. However, "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees." Id.; see also Lytle v. Doyle, 326 F.3d 463, 474 (4th Cir. 2003) (holding that a municipality's omission, such as a failure to properly train officers, "can only form a basis for liability if it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations") (internal citation and quotation marks omitted); Carter, 164 F.3d at 220 (holding that the plaintiff failed to provide evidence of a "widespread and permanent practice necessary to establish municipal custom," where the plaintiff identified "no relevant incident prior to her own case of which the City could have had knowledge and in which it acquiesced") (internal citation and quotation marks omitted); Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994) ("[N]either a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone.")

   With these principles in mind, the court concludes that the plaintiff's second amended complaint fails to state a claim against the County or the Board. While the second amended complaint alleges that the municipal defendants failed to take any action in response to her Notice of Claim, neither that complaint nor any of the plaintiff's previous pleadings allege the existence of known, widespread constitutional violations on the part of County officials or employees 'comparable to that alleged as to [the plaintiff]." Milligan, 743 F.2d at 230. Likewise, the facts alleged by the plaintiff do not support the conclusion that the alleged violation of the plaintiff's Fourth Amendment rights was "part of a known course of conduct by

[municipal] employees having manifest potential for causing constitutional deprivations to an identifiable group of persons occupying a special relationship to the state." Id. In sum, the plaintiff has provided no allegations, except those pertaining to her own experience, to support the proposition that the alleged Fourth Amendment violation was the result of a policy or custom of the County or the Board. Because "a municipal policy or custom giving rise to § 1983 liability will not be inferred merely from municipal inaction in the face of isolated constitutional deprivations by municipal employees," Id. at 230, the plaintiff's second amended complaint fails to state a claim against the County and the Board. See W.E.T. v. Mitchell, 2007 U.S. Dist. LEXIS 68376, at *34 (M.D. N.C. Sept. 14, 2007) (holding that the plaintiffs failed to state a claim under § 1983 against the municipal defendant, where the plaintiffs' complaint alleged "only one instance of unconstitutional activity"); Lanford v. Prince George's County, 199 F. Supp. 2d 297, 305 (D. Md. 2002) (dismissing the plaintiff's municipal liability claim, where the plaintiff "provided no allegations, except those surrounding his own arrest and injury, to establish that [either municipality had] a policy or custom of 'excessive force, improper supervision, police misconduct, and use of unnecessary force'"). Thus, to the extent the plaintiff seeks leave to assert a Fourth Amendment claim against Alleghany County and the Board of Supervisors under § 1983, the plaintiff's motion will be denied as futile.

## C. PNS and MKB

The plaintiff's second amended complaint also fails to state a claim against PNS and MKB. The Fourth Circuit has held that the principles of § 1983 municipal liability articulated in Monell are equally applicable to private corporations that have been sued under § 1983. See Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982). Thus, "a private corporation is

30

liable under § 1983 <u>only</u> when an official policy or custom of the corporation causes the alleged

deprivation of federal rights." <u>Austin v. Paramount Parks, Inc.</u>, 195 F.3d 715, 728 (4th Cir.

1999) (emphasis in original).

In this case, the plaintiff does not allege, in either the second amended complaint or in

any of her previous pleadings, that her constitutional rights were violated as a result of an official

policy or custom on the part of PNS or MKB. To the contrary, the plaintiff alleges, in her first

amended complaint, that MKB is "liable for any wrongful conduct of its employees." (1st Am.

Compl. para. 5). Likewise, the plaintiff alleges that PNS's "liability is derived from wrongful

acts of its employees." (1st Am. Compl. para. 8). Because neither defendant can be "saddled

with section 1983 liability via respondeat superior alone," <u>Powell</u>, 678 F.2d at 506, the plaintiff's

Fourth Amendment claim against MKB and PNS is without merit. Consequently, the plaintiff's

motion to amend will be denied as futile with respect to these defendants.

### D.     <u>Stephenson, Hall, Wesser, Arnold, and Underwood</u>

The court must now determine whether the plaintiff has alleged sufficient facts to state a

claim for malicious prosecution under the Fourth Amendment against the remaining individual

defendants, Stephenson, Hall, Wesser, Arnold, and Underwood. As previously discussed, the

Fourth Circuit has held that a "malicious prosecution claim under § 1983 is properly understood

as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of

the common law tort." <u>Lambert v. Williams</u>, 223 F.3d at 261. Thus, in order to state a claim for

malicious prosecution under the Fourth Amendment, the Fourth Circuit has "required that the

<u>defendant</u> have 'seized [plaintiff] pursuant to legal process that was not supported by probable

cause and that the criminal proceedings [have] terminated in [plaintiff's] favor.'" <u>Burrell v.</u>

31

Commonwealth, 395 F.3d 508, 514 (4th Cir. 2005) (emphasis in original) (quoting Brooks v.

City of Winston-Salem, 85 F.3d 178 at 183-184).

In response to the plaintiff's motion for leave to file a second amended complaint,

Stephenson and Hall argue that the proposed Fourth Amendment claim fails as a matter of law,

because the plaintiff does not allege that "any of the defendants at bar actually seized her."

(Stephenson and Hall's Resp. pg. 2). Relying on the fact that the term "defendant" is emphasized

in the foregoing passage from Burrell, Stephenson and Hall contend that a Fourth Amendment

claim may only be asserted against a defendant who actually arrested or otherwise seized the

plaintiff. While the court acknowledges that Burrell's emphasis on the term "defendant" could

be read to support the argument raised by Stephenson and Hall, the Fourth Circuit, in a

subsequent case, refused to limit the scope of Fourth Amendment claims in such a manner. In

Miller v. Prince George's County, 475 F.3d 621 (4th 2007), the Fourth Circuit held as follows:

> Nor, contrary to Det. Dougans's contentions, does the fact that he
> was not the arresting officer eliminate his responsibility for the
> natural consequences of his use of intentionally or recklessly false
> material misstatements and omissions to obtain the arrest warrant.
> As the First Circuit explained in recently rejecting a similar
> argument, "a police defendant who acts intentionally or with
> reckless disregard for the truth may not insulate himself from
> liability through the objectively reasonable conduct of other
> officers." Burke v. Town of Walpole, 405 F.3d 66, 86 (1st Cir.
> 2005). That Trooper Ward actually arrested Plaintiff does not free
> Det. Dougans from constitutional responsibility for Det. Dougan's
> own acts.

Miller, 475 F.3d at 630; see also White v. Wright, 150 Fed. Appx. 193, 197 (4th Cir. 2005)

("White cannot make out a Fourth Amendment claim unless he also demonstrates that Lt.

Wright's wrongful acts resulted in his being seized without probable cause.") (emphasis added).

Based on the Fourth Circuit's decision in Miller, the court is unable to conclude that the

32

plaintiff's Fourth Amendment claim is without merit, solely because she does not allege that she was actually seized by any of the individual defendants.

The court is also unpersuaded by Wesser and Arnold's argument that the plaintiff's Fourth Amendment claim is precluded by the fact that her alleged seizure followed the issuance of her indictments by a grand jury. While the Supreme Court of the United States has held that probable cause for an arrest "may be satisfied by an indictment returned by a grand jury," <u>Kalina v. Fletcher</u>, 522 U.S. 118, 129 (1997), the plaintiff alleges that Stephenson, Hall, Wesser, Arnold, and Underwood submitted to the Office of the Attorney General false evidence that, in turn, was submitted to the grand jury, thereby causing the plaintiff to be indicted without probable cause. In light of such allegations, the court is unable to conclude that the plaintiff has failed to state a claim under the Fourth Amendment against these defendants. <u>See</u> <u>White</u>, 150 Fed. Appx. at 197-198 (recognizing that the probable cause determination was made by the grand jury when it returned the plaintiff's indictment, but going on to consider whether the plaintiff presented sufficient evidence to establish that the grand jury's decision was tainted by the defendant's actions); <u>Hart v. Parks</u>, 450 F.3d 1059, 1070 (9th Cir. 2006) ("The district court properly concluded that probable cause for an arrest may be satisfied by an indictment returned by a grand jury. Normally, this alone would extinguish the inquiry into the false arrest claim, but here Hart also questions the validity of the indictment.") (internal citation and quotation marks omitted); <u>Shields v. Twiss</u>, 389 F.3d 142, 150 (5th Cir. 2004) ("This circuit has held . . . that once facts supporting an arrest are placed before an independent intermediary such as a . . . grand jury, the intermediary's decision breaks the chain of causation for these constitutional violations. Nevertheless, these claims may be maintained if the plaintiff affirmatively shows that the

33

deliberations of that intermediary were in some way tainted by the actions of the defendants.")
(internal citations and quotation marks omitted); but see Witt v. Harbour, 508 F. Supp. 378, 379-
380 (W.D. Va. 1980) (holding that a suspect arrested on a warrant following the return of an
indictment procured through perjury by a government employee could not assert a Fourth
Amendment claim under § 1983 against that employee, since the issuance of the indictment
conclusively determined the existence of probable cause for the suspect's arrest).

Having reviewed the allegations in the plaintiff's first and second amended complaints,
the court concludes that the plaintiff has alleged sufficient facts, at this stage of the litigation, to
establish that the wrongful acts of Stephenson, Hall, Wesser, Arnold, and Underwood "resulted
in his being seized without probable cause." White v. Wright, 150 Fed. Appx. at 197. While the
legal and factual sufficiency of the plaintiff's Fourth Amendment claim remains to be tested, the
court is unable to conclude that permitting her to amend her complaint to state a Fourth
Amendment claim against these defendants would be futile.[8] Accordingly, the plaintiff's motion
for leave to file a second amended complaint will be granted in part and denied in part.

---

[8] The court notes that while the defendants argued that Counts II, III, and IV of the plaintiff's
first amended complaint were barred by the applicable two-year statute of limitation, none of the
defendants argue that the plaintiff's Fourth Amendment claim is untimely. Indeed, a claim for malicious
prosecution under § 1983 and the Fourth Amendment does not accrue until the favorable termination of
the relevant criminal proceeding. See Brooks v. City of Winston-Salem, 85 F.3d 178 at 183. In this case,
the plaintiff alleges that her criminal charges were nolle prossed on March 16, 2006. Although the
plaintiff did not move to amend her complaint to state a claim under the Fourth Amendment until July 14,
2008, the amendment relates back to the date on which the first amended complaint was filed (February
11, 2008), since it "asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out –
or attempted to be set out" in that complaint. Fed. R. Civ. P. 15(c)(1)(B).

## Conclusion

For the reasons stated, the motion to abstain filed by MKB, Wesser, and Arnold will be denied; the plaintiff's motion to exercise supplemental jurisdiction will be denied; the plaintiff's motion for extension of time to respond to Underwood's motion to dismiss will be granted; the defendants' motions to dismiss the plaintiff's first amended complaint will be granted; and the plaintiff's motion for leave to file a second amended complaint will be granted in part and denied in part.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 28 ᵗʰ day of August, 2008.

_____
United States District Judge