CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

JUL 30 2009

BY: JOHN F. CORCORAN, CLERK
    /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JEANNE Q. JACKSON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 7:07CV00417 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| ALLEGHANY COUNTY, et al., | ) By: Hon. Glen E. Conrad |
| | ) United States District Judge |
| Defendants. | ) |

This civil rights action under 42 U.S.C. § 1983 stems from Jeanne Q. Jackson's termination from the Office of the Alleghany County Administrator and her subsequent criminal prosecution for violations of the Virginia Computer Crimes Act, Virginia Code § 18.2-152.1, et seq. The court previously dismissed all of the claims asserted in Jackson's first amended complaint, but permitted her to file a second amended complaint asserting a claim for malicious prosecution under the Fourth Amendment. Upon the completion of discovery, Jackson and the remaining defendants, Tammy Stephenson, Rick Hall, Christopher Wesser, Michael Arnold, and Ronnie Underwood, filed cross-motions for summary judgment with respect to that claim. For the reasons that follow, the defendants' motions for summary judgment will be granted and Jackson's motion for summary judgment will be denied.

**Factual Background**

Alleghany County installed monitoring software on its computer network in June of 2003, following reports of inappropriate computer use by County employees. The software monitored County employees' computer and internet use in three ways: (1) by recording the employees' keystrokes; (2) by logging internet and network links and paths; and (3) by taking screen captures

every fifteen minutes from the time that employees logged on to their computers. The monitoring software was installed on the employees' individual workstations by Ronnie Underwood, an independent contractor who served as the County's network administrator.

The application for the monitoring software was housed in a hidden file, or share, which was located on the County's file server at the following path: \\Alleg-fs-01\451$. The share, known as the "451$," contained a folder for each employee that housed the employee's monitored computer data. Because the share was hidden, a network user could not locate the share by simply searching for it. Instead, to access the share, a network user had to type in the share's specific path address or have a direct link to the share on his or her computer.

Tammy Stephenson, who served as the County Administrator during the relevant time period, was the only County employee who was intended to have access to the 451$ share. After the monitoring software was installed on the County's computer network, Stephenson met with her employees, including Jackson, and informed them about the software. Stephenson also explained that she would be the only person monitoring the employees' computer use.

In June of 2003, the plaintiff, Jeanne Jackson, gained access to the 451$ share. According to her deposition testimony, Jackson found a link with a "string of numbers" in the "My Network Places" folder on her computer. (Jackson Dep. at 19-20). She clicked on the link with her mouse and saw subfolders labeled with the usernames assigned to County employees. Jackson subsequently selected one the of the subfolders and discovered that she could access the County employees' monitored computer activity. Jackson shared her discovery with three of her coworkers, Julie Brackenridge, Joy Putnam, and Becky Lane. Although Jackson and her

2

coworkers knew that Jackson was not supposed to have access to the 451$ share, none of them informed Stephenson or Underwood of Jackson's discovery.

After her initial visit to the 451$ share, Jackson accessed the monitoring folders assigned to other County employees on multiple occasions from June of 2003 to September of 2004. During her deposition, Jackson admitted that she had accessed the monitoring folders assigned to the following employees: Susan Myers, Melissa Landis, Donna Fox, Donna Kimberlin, Mary Jones, Mary Haynes, Michelle Dudley, Julie Brackenridge, Joy Putnam, Lori Parris, and Rick Hall. Jackson also testified that each time she viewed the other employees' monitoring folders, she would "print out what [she] saw."[1] (Jackson Dep. at 18).

On September 14, 2004, Jackson noticed a new icon on her computer screen. When Jackson clicked on the icon, a drop-down menu appeared that contained the names of County employees, including her own name and Rick Hall's name. (Jackson Dep. at 29). Jackson highlighted Hall's name and clicked an "okay" button, which enabled her to see data contained in Hall's monitoring folder in the 451$ share. (Jackson Dep. at 29).

Jackson subsequently viewed what has come to be known as the "rhall text," which consisted of keystrokes that were captured by the monitoring system and stored in Hall's monitoring folder. As Jackson scrolled through the text, she discovered what appeared to be a

---

[1] Jackson testified that she "didn't really care what other people were doing" on their computers; her purpose in accessing, reviewing, and printing the information contained in the monitoring folders was "[t]o try to save" herself, Brackenridge, Putnam, and Lane. (Jackson Dep. at 29-30).
  Although Jackson denied viewing the files of certain other employees, she conceded at her deposition that the computer data in the monitoring folder assigned to her made it appear that she had done so. Specifically, Jackson acknowledged that the computer data made it appear that she had accessed the monitoring folders for Ryan Muterspaugh, Gary Hepler, Christy Johnson, Lisa Holt, and Tammy Stephenson.

3

sexually explicit online chat. Since she was "100 percent certain" that Hall had typed the explicit text, Jackson believed that she "had to go to somebody in authority about [it.]" (Jackson Dep. at 138). Consequently, on September 21, 2004, Jackson and Brackenridge provided a copy of the text to Carolyn Barnette, who served on the Alleghany County Board of Supervisors.

Barnette read the text and immediately called Stephenson. Barnette advised Stephenson that an employee had violated the County's computer policy, but did not provide the name of the person who had alerted her to the problem or any details regarding the information that she had been shown.

Armed with the cursory information that she had received from Barnette, Stephenson contacted Underwood and asked him to look into the matter. In response, Underwood scanned the County employees' monitoring folders for inappropriate content and ultimately came across the rhall text. Underwood contacted Stephenson on the evening of September 21, 2004 and informed her that he had found text of an explicit nature in Hall's monitoring folder.

Approximately two weeks later, Jackson, Brackenridge, and Putnam presented Stephenson with a copy of the rhall text. Jackson explained how she had obtained the text, and advised Stephenson that she had been able to access the County employees' monitoring folders for "maybe as long as [Stephenson]" had been able to access them. (Jackson Dep. at 106).

Stephenson inquired with Underwood as to how Jackson and her coworkers could have accessed and obtained the information in question. Underwood subsequently reviewed the captured monitoring data for Jackson, her coworkers, and other Alleghany County employees,

4

and discovered that "jjackson," which was the username assigned to Jackson, had accessed the hidden monitoring system on a number of occasions.

Stephenson contacted Alleghany County Attorney Michael Collins and another attorney, Agnis Chakravorty, who was counsel to the County on employment matters, and advised them of the situation. At Underwood's recommendation, the County hired a third party, Professional Network Services ("PNS"), to conduct an analysis of Jackson and Hall's computers.

On October 15, 2004, the computers assigned to Jackson, Hall, and another employee were taken to PNS's office in Roanoke, where they were audited by David Bailey. Bailey also traveled to Alleghany County and examined the County's server. According to a report from PNS, Bailey found that "jjackson's key files [showed] a history of accessing other users' folders, which went [on] from August of 2003 to September of 2004." (Defs.' Joint Ex. 20).

In November of 2004, the County retained the law firm of Moran Kiker Brown ("MKB") to assist with its investigation of Jackson. On November 29, 2004, Christopher Wesser, an attorney with MKB, and Michael Arnold, MKB's network administrator, traveled to Alleghany County and examined the County's server. During that visit, Wesser and Arnold met with Stephenson, Underwood, Bailey, and Collins, and learned how the 451$ share operated. Wesser and Arnold then reviewed data from the individual workstation assigned to Jackson, as well as Jackson's monitoring folder. Based on their review, Wesser and Arnold concluded that someone utilizing the username jjackson had accessed the 451$ share and viewed other employees' monitoring folders on multiple occasions.

5

On December 2, 2004, the County, through Stephenson, issued Jackson a notice of intent to terminate her employment. In the notice, Stephenson advised Jackson that she was being terminated on the basis that she had violated County policy by repeatedly accessing the County's computer monitoring system and reviewing the folders assigned to other employees.

Jackson subsequently filed a grievance challenging her termination. A three-member grievance panel, which met and heard evidence on June 15, 2005, unanimously held that Jackson had engaged in conduct that warranted discipline. Additionally, a majority voted in favor of upholding Jackson's termination.

As early as November of 2004, Collins, the County Attorney, expressed his opinion that the report from PNS indicated "violations of . . . various [Virginia] code sections" by Jackson. (Collins Dep. at 65). Likewise, Wesser, based upon his investigation and that of PNS, also concluded that Jackson had likely violated Virginia law. On December 7, 2004, Wesser sent Stephenson a letter stating that he believed the County could demonstrate that Jackson had accessed the 451$ share without authorization; that she had accessed other employees' monitoring folders within the share; that she had transferred the file containing the monitoring program from the County's file server to another computer; and that she had altered or erased her own monitoring logs in an attempt to conceal her access to the 451$ share. Wesser further stated that he believed such actions constituted violations of certain Virginia criminal statutes.

Stephenson and Collins kept the Board of Supervisors updated on developments in the matter, and at some point, the Board instructed them to contact law enforcement authorities and

request a criminal investigation. In December of 2004, at the direction of Stephenson and Collins, Wesser began contacting law enforcement authorities.

On April 11, 2005, Stephenson had a telephone conference with attorneys from the Computer Crimes Division of the Office of the Attorney General of Virginia ("OAG"), which ultimately assumed the criminal investigation of Jackson. The case was assigned to Assistant Attorney General Matthew Nelson. Prior to proceeding with the investigation and prosecution of Jackson, Nelson consulted with and obtained authorization from his section chief, the Chief Deputy Attorney General, and the Attorney General.

Once the decision was made to investigate Jackson for potential computer crimes, the OAG took several steps to gather information. In May of 2005, Nelson obtained a copy of an interim report that Wesser had provided to the County, which summarized the evidence against Jackson. On June 16, 2005, Nelson and an investigator employed by the OAG, C.W. Lawrence, met with Wesser and Arnold. Nelson requested and was provided a copy of a presentation used during Jackson's grievance hearing; a USB hard drive, which Nelson believed contained copies of files from the County's server; and the computers that had been analyzed by PNS. Nelson independently reviewed the computer data and other information that he obtained.

In addition, Investigator Lawrence conducted interviews with multiple witnesses in Alleghany County, some of whom are not parties to the instant action. During the interviews, Lawrence was told that Jackson first gained access to the monitoring program in June of 2003, and that County employees, including Jackson, had been advised that Stephenson "was the only person authorized to monitor computer activity." (Defs.' Joint Exs. 28 and 32). Lawrence was

7

also told of the specific steps that Jackson would take to access the employees' individual monitoring folders, and that "curiosity" had led Jackson and her coworkers to "repeatedly access the system." (Defs.' Joint Ex. 28).

In June or July of 2005, Nelson drafted 36 indictments against Jackson for violations of the Virginia Computer Crimes Act.[2] Of those indictments, 30 indictments charged Jackson with unlawfully and intentionally using a computer or computer network, without authority, to examine employment, salary, credit or other financial or personal information pertaining to County employees, in violation of Virginia Code § 18.2-152.5.[3] Three of the indictments charged Jackson with unlawfully using a computer or computer network to make an unauthorized copy of computer data residing in a computer or computer network, in violation of Virginia Code § 18.2-152.4(A)(6). The remaining indictments charged Jackson with unlawfully using a computer or computer network, without authority, to convert property belonging to Alleghany County, in violation of Virginia Code § 18.2-152.3; and with unlawfully using a computer or computer network, without authority, to alter or erase computer data, in violation of Virginia Code § 18.2-152.4(A)(3).

The OAG interpreted the term "employment information," as used in Virginia Code § 18.2-152.5, to include any information collected by the County's monitoring system from the

---

[2] According to Nelson, "[t]he decision to indict Jeanne Jackson was made by the OAG"; none of the defendants directed the prosecution or pressured the OAG to indict her. (Nelson Decl. at para. 2-14).

[3] The County employees specifically referenced in the indictments included Rick Hall, Donna Fox, Melissa Landis, Tammy Stephenson, Sue Myers, Ryan Muterspaugh, Michelle Dudley, Julie Brackenridge, Joy Putnam, Gary Hepler, Christy Johnson, Becky Lane, Mary Haynes, Lori Parris, Lisa Holt, and Donna Kimberlin.

8

County employees' computers. (Nelson Decl. at 25). Given this interpretation, the "OAG believed that the act of Jeanne Jackson using the Alleghany County computer network to access the monitoring software to access the subfolders assigned to other employees constituted a crime." (Nelson Decl. at para. 17). Likewise, the "OAG believed that the act of Jeanne Jackson using a printer connected to the Alleghany County computer network to print out information contained in the subfolders assigned to other employees constituted a crime." (Nelson Decl. at para. 18).

On July 12, 2005, a grand jury in the Circuit Court of Alleghany County returned true bills for each of the 36 indictments.[4] Following the return of the indictments, Jackson turned herself in to law enforcement authorities. She was fingerprinted, photographed, and released on bond.

In March of 2006, all of the indictments against Jackson were dismissed on the Commonwealth's motion. The Commonwealth sought dismissal of the indictments after Nelson discovered that the USB hard drive that he had been provided did not contain copies of files from the County's server; instead, the files had actually been removed from the server and placed on the hard drive. While Nelson "still . . . believed there was probable cause" for the indictments, he determined that the removal of the files from the County's server created an evidentiary

---

[4] The indictments state that they were based "[u]pon the evidence of C.W. Lawrence," the OAG investigator. (Pl.'s 1st Am. Compl., Ex. E).

9

problem that would prevent the Commonwealth from proving Jackson guilty beyond a reasonable doubt.[5] (Nelson Dep. at 165).

## Procedural History

On July 20, 2007, Jackson filed the instant action in the Circuit Court of Alleghany County against Alleghany County, PNS, Bailey, and the Alleghany County Board of Supervisors, asserting claims under 42 U.S.C. § 1983, the Fourteenth Amendment, and Article I, § 11 of the Constitution of Virginia. The action was removed to this court on August 28, 2007, and on February 19, 2008, the court denied Jackson's motion to remand.

Jackson was granted leave to file an amended complaint on February 22, 2008. In the amended complaint, which added Stephenson, Hall, Underwood, MKB, Wesser, and Arnold as defendants, Jackson asserted the following claims: "malicious prosecution" under the Fourteenth Amendment (Count I); "denial of free speech" (Count II); "violation of her liberty interest" (Count III); and "denial of due process of law" (Count IV).

All of the defendants subsequently moved to dismiss the amended complaint. Following a hearing on the defendants' motions, Jackson filed a motion for leave to file a second amended complaint. In the second amended complaint, Jackson sought to include an additional count asserting a malicious prosecution claim under the Fourth Amendment.

On August 28, 2008, the court granted the defendants' motions to dismiss the first amended complaint. The court also granted in part and denied in part Jackson's motion for leave

---

[5] The record indicates that investigators with the Virginia State Police were of the opinion that the computer evidence had not been properly collected and preserved, and that they conveyed their concerns to Nelson.

to file a second amended complaint. The court denied the motion for leave to amend as futile with respect to Bailey, since Bailey had not been served with process and the time for doing so had expired. The court also denied the motion for leave to amend as futile with respect to the County, the Board of Supervisors, PNS, and MKB, based on the conclusion that the proposed amendment failed to state a claim against those defendants. On the other hand, the court held that Jackson had alleged sufficient facts to state a Fourth Amendment claim against Stephenson, Hall, Wesser, Arnold, and Underwood, and thus, granted Jackson's motion for leave to file a second amended complaint against those five defendants.[6]

The case is presently before the court on cross-motions for summary judgment filed by Jackson and the remaining defendants. The court held a hearing on the parties' motions on June 15, 2009. The motions are ripe for review.

---

[6] To support her malicious prosecution claim under the Fourth Amendment, Jackson alleged that she was indicted on the basis of false, fabricated, and/or misrepresented facts presented by the defendants to the OAG; that the grand jury would not have found probable cause to indict her if truthful information regarding the computer evidence had been presented to the grand jury; and that "[f]rom July 12, 2005 until March 16, 2006 the Plaintiff was under the authority of the Court requiring her to comply with its orders, to appear at all appropriate hearings, [and] to answer to the charges." (2d Am. Compl. at para. 111-114). Jackson also incorporated her first amended complaint, in which she alleged that the indictments and prosecution were "set on foot by the Defendants, Stephenson, Underwood, Hall, MKB/Wesser/Arnold and PNS/Bailey." (1st Am. Compl. at para. 71). Jackson further alleged that the OAG relied on documents and representations received from the defendants, and that misrepresentations made to Nelson and the OAG's investigator led Nelson and the investigator to believe that the evidence was reliable and that the computer data supported the documents that the defendants had provided. Additionally, Jackson alleged that "Stephenson used her position, her political influence, and her personal relationship with Nelson, to convince Nelson [that] the investigation she, Underwood, PNS/Bailey and Wesser/MKB and Arnold allegedly conducted of the computer evidence was sufficient to indict Jackson." (1st Am. Compl. at para. 79).

11

## Standard of Review

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the nonmoving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).[7]

## Discussion

As previously stated, the sole remaining cause in this § 1983 action is Jackson's claim for malicious prosecution. The United States Court of Appeals for the Fourth Circuit has held that a "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000). Specifically, to prevail on a claim for malicious prosecution under the Fourth Amendment, a plaintiff must prove that she was seized without probable cause as the result of the defendants' wrongful acts, and that the criminal proceedings terminated in her favor. See Burrell v. Commonwealth, 395 F.3d 508, 514 (4th Cir. 2005).

---

[7] Cross-motions for summary judgment are reviewed under the same standard, with the court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal citation and quotation marks omitted).

Case 7:07-cv-00417-GEC-mfu  Document 233  Filed 07/30/09  Page 12 of 15  Pageid#: 4199

In this case, the defendants do not dispute that Jackson was seized, for purposes of the Fourth Amendment, following the return of the indictments.[8] Likewise, it is undisputed that all of the indictments against Jackson were dismissed, and thus, that the criminal proceedings terminated in her favor. Nonetheless, Jackson "cannot make out a Fourth Amendment claim unless [she] also demonstrates that [the defendants'] wrongful acts resulted in [her] being seized without probable cause." White v. Wright, 150 F. App'x 193, 197 (4th Cir. 2005) (citing Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir. 1995)). This Jackson has failed to do.

In Jackson's criminal case, the probable cause determination was made by the grand jury when it returned the indictments against her. See Kalina v. Fletcher, 522 U.S. 118, 129 (1997) (holding that the Fourth Amendment requirement that arrest warrants be based upon probable cause may be satisfied by an indictment returned by a grand jury).[9] While Jackson has alleged that the grand jury's deliberations were tainted by the defendants' wrongful acts, she has offered no evidence to support this assertion. Indeed, the record is completely devoid of any evidence of

---

[8] As previously stated, Jackson turned herself in to authorities and was fingerprinted, photographed, and released on bond. See, e.g., White v. Wright, 150 F. App'x 193, 197 (4th Cir. 2005) (holding that the Fourth Amendment's seizure requirement was satisfied where the plaintiff "voluntarily surrendered to authorities and was detained briefly for fingerprinting and processing").

[9] While the United States Supreme Court has held that "an indictment, fair upon its face, and returned by a properly constituted grand jury, conclusively determines the existence of probable cause," Gerstein v. Pugh, 420 U.S. 103, 119 n. 19 (1975), courts have recognized that the return of an indictment by a grand jury does not automatically foreclose a plaintiff from pursuing a cause of action under the Fourth Amendment, where there is evidence that the grand jury's deliberations were "tainted by the actions of the defendants." Shields v. Twiss, 389 F.3d 142, 150 (5th Cir. 2004); see also Cook v. McPherson, 273 F. App'x 421, 424 (6th Cir. 2008) (noting that a grand jury indictment does not preclude a malicious prosecution claim where there is evidence of false statements or misrepresentations by law enforcement officials during the grand jury proceedings); Harris v. Roderick, 126 F.3d 1189, 1198 (9th Cir. 2007) (adopting the position that "a finding of probable cause [by a grand jury] that is tainted by the malicious actions of the government officials [involved] does not preclude a claim against the officials") (internal citation omitted).

13

what transpired before the grand jury, much less any evidence that the grand jury indictments were based on false or misleading information supplied by the defendants. Consequently, Jackson has failed to establish a question of fact as to whether the defendants caused her to be seized in violation of the Fourth Amendment, and thus, the defendants are entitled to summary judgment.[10] See Wright, 150 F. App'x at 198 (affirming the district court's grant of summary judgment to the defendant on the plaintiff's claim that he was indicted and, in turn, seized on the basis of false evidence provided by the defendant, since the court was "unable to determine [from the record] what exactly the grand jury considered in making its probable cause determination").

## Conclusion

For the reasons stated, the court concludes that Tammy Stephenson, Rick Hall, Christopher Arnold, Michael Wesser, and Ronnie Underwood are entitled to summary judgment with respect to the plaintiff's remaining claim for malicious prosecution under the Fourth

---

[10] Alternatively, the court notes that it is clear from the <u>undisputed</u> evidence in the record that there was probable cause to believe that Jackson committed at least some of the offenses with which she was charged. "Probable cause only requires enough evidence to warrant a man of reasonable caution in the belief that an offense has been . . . committed." Wilkes v. Young, 28 F.3d 1362, 1365 (4th Cir. 1994) (internal citation and quotation marks omitted). Several courts have held that an individual seized on the basis of multiple charges cannot establish a claim for malicious prosecution under the Fourth Amendment, if there was probable cause for at least one of the charges that gave rise to the individual's seizure. See, e.g., Wright v. City of Philadelphia, 409 F.3d 595, 598 (3d Cir. 2005) (holding that the conclusion that there was probable cause for the plaintiff's arrest for criminal trespass also "dispose[d] of her malicious prosecution claims with respect to all of the charges brought against her"); Price v. Roark, 256 F.3d 364, 370 (5th Cir. 2001) (holding that the plaintiff's arson charge did not support a claim for malicious prosecution under the Fourth Amendment, since the defendant had probable cause to arrest the plaintiff for a license tag violation, and thus, the plaintiff's single seizure was valid); Smith v. McCluskey, 126 F. App'x 89, 96 (4th Cir. 2005) (Gregory, J., concurring) (opining that the conclusion that probable cause existed for the defendant to arrest the plaintiff for violating a particular ordinance "effectively resolve[d] all of the claims before [the Court]," including a claim for malicious prosecution under the Fourth Amendment) (citing Price v. Roark, supra); but see, e.g., Posr v. Doherty, 944 F.2d 91, 100 (2d Cir. 1991) (holding that a finding of probable cause on the charge of disorderly conduct did not foreclose a malicious prosecution action on charges requiring "different, and more culpable, behavior").

14

Amendment. Accordingly, the defendants' motions for summary judgment will be granted, and the plaintiff's motion for summary judgment will be denied.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 30th day of July, 2009.

*/s/ Jack Conrad*
United States District Judge